O'CONNOR PLAYDON GUBEN & INOUYE LLP
A LIMITED LIABILITY LAW PARTNERSHIP

RANDOLPH R. SLATON 1647-0
Of Counsel
JERROLD K. GUBEN 3107-0
733 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
RRS@opgilaw.com
JKG@opgilaw.com

Attorneys for Movant
EBBTIDE, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAIIAN EBBTIDE HOTEL, INC.,<br><br>    Debtor. | Case No. 19-00227<br>(Chapter 11)<br><br>*Hearing:*<br>Date: June 5, 2019<br>Time: 2:00 p.m.<br>Judge: Honorable Robert J. Faris<br><br>*Docket Reference #32* |

**EBBTIDE LLC'S JOINDER IN THE UNITED STATES TRUSTEE'S MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 OR, ALTERNATIVELY, TO DISMISS CASE; EXHIBIT A**

    Ebbtide, LLC ("Ebbtide") files this Joinder in the United States Trustee's Motion to Convert Chapter 11 Case to Chapter 7 Or, Alternatively, To Dismiss Case.

## I. BACKGROUND

On February 21, 2019, the jury in *Ebbtide LLC v. Hawaiian Ebbtide Hotel, Inc., Civil No. 12-1-3090 (First Circuit, State of Hawaii)*, returned a verdict in favor of Ebbtide LLC and against Hawaiian Ebbtide Hotel, Inc., terminating the lease. Attached as Exhibit A is the Amendment and Restatement of Lease.

After the jury returned with a verdict in favor of Ebbtide LLC terminating the lease, the LLC prepared a proposed form of judgment to be entered by the Circuit Court.

Before the jury verdict could be memorialized in a judgment by the Honorable Jeffrey Crabtree, Judge of the Circuit Court of the First Circuit, State of Hawaii, the Debtor filed its Chapter 11 petition, invoking the automatic stay.

On February 25, 2019, the Debtor filed its Chapter 11 Petition, two business days after the return of the jury verdict.

On March 25, 2019, the Ebbtide LLC filed its Motion for Relief to Annul Automatic Stay Retroactive to the Petition Date, February 25, 2019. The Preliminary hearing on LLC's Motion for Relief was continued to May 21, 2019.

On May 8, 2019, the United States Trustee filed its Motion to Convert Chapter 11 Case to Chapter 7 Or, Alternatively, To Dismiss Case. On May 21, 2019,

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed 05/29/19   Page 2 of 42

this Court granted the Ebbtide Motion for modifying the automatic stay effective when the order was entered on the docket.[1]

Section 1112(b)(4) is the basis of a motion to convert or dismiss. As to the Debtor's post-petition operations as a Debtor-in-Possession, the Debtor has yet to file its Monthly Operating Reports for March or April, 2019. The Debtor has yet to obtain Court approval for its debtor-in-possession counsel and has not filed a single first day motion for the post-petition operations of the Hotel, including opening a debtor-in-possession bank account.

Based on the Declaration of Lynn Yamamoto, the State of Hawaii, Department of Taxation, the Department cannot locate a General Excise Tax Number for the Debtor. Section 1112(b)(4) of the Code provides for the conversion or dismissal where, according to 1112(b)(4)(A),[2] there is the absence of a "reasonable likelihood of rehabilitation".

---

[1] On May 21, 2019, LLC's counsel emailed a proposed form of Order to the Debtor's counsel, with a copy of LBR 9023-1, explaining the local procedure for the entry of orders. The Debtor's counsel has not responded or signed the proposed form of Order approved as to form.

[2] 11 U.S.C. § 1112(b)(4)(A) provides,

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed 05/29/19   Page 3 of 42

Under State law, a debtor's lease can be terminated upon the entry of a writ of possession by a court, § 666-13, H.R.S. and *In re Mechanical Unlimited, 38 B.R. 818 (Bankr.D.Hawaii).*

In addition to § 666-13, H.R.S., a pre-petition termination of a lease is enforceable post-petition,[3] preventing the debtor from assuming the terminated lease. In the case at bar, the lease was terminated pre-petition by state law and a jury verdict. Ebbtide has obtained an order of this Court granting relief from the automatic stay to allow the Circuit Court in Civil No. 12-1-03090 to enter a final judgment, the jury verdict would have been reduced to judgment. However, under applicable bankruptcy law, the lease was terminated by virtue of the pre-petition default.

In this case, but for the filing of the Chapter 11 petition, two business days after the return of the jury verdict, but before the state court could enter a judgment, the Debtor's lease would have been terminated on the docket. Nonetheless, the lease was terminated by the numerous and serious defaults.

_____

[3] 11 U.S.C. § 362(b)(10) provides,

> (10) under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed 05/29/19   Page 4 of 42

As to the improvements on the premises, Article 14 of the Lease provides

> **14.  SURRENDER:**
>
> At the end of the term of this Lease or other sooner termination or cancellation of this Lease, Lessee shall peaceably deliver up to Lessor possession of the Premises hereby demised, together with all improvements upon or belonging to the same, by whomsoever made. Upon the expiration or earlier termination of the term of this Lease, all Improvements then located on the Premises shall, with the Premises, be vacated and surrendered free of all liens by Lessee to Lessor and shall become the property of Lessor, and Lessee agrees to execute and deliver to Lessor such deeds, assignments, or other instruments of conveyance as Lessor may deem necessary to evidence such transfer of title to Lessor, it nevertheless being understood that upon expiration or termination, title to the Improvements shall automatically vest in Lessor by operation of law and no Lessee's execution of a bill of sale or assignment requested by Lessor shall in any manner be deemed a condition precedent to the automatic vesting of title. For the purpose of carrying out the provisions of this paragraph 14, Lessee hereby irrevocably constitutes and appoints Lessor its true and lawful attorney-in-fact with full power of substitution to execute, acknowledge and deliver any instruments referred to in this paragraph 14 in the name and on behalf of Lessee. The power vested in said attorney-in-fact is, and shall be deemed to be, coupled with an interest and irrevocable.

In this case, with the termination of the lease, either by its own terms or by judicial action, the improvements on the premises revert to the lessor, Ebbtide LLC.

The issue is whether the jury determination based on the pre-petition defaults, terminated the lease pre-petition, leaving nothing for the debtor to assume the lease under the Bankruptcy Code.

In *In re West Pine Construction, 80 B.R. 315 (Bankr.E.D.Pa. 1987)*, the issue was whether a lease which terminated prematurely and not at the expiration of

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed  05/29/19   Page 5 of 42

the stated term, created an interest in the lessee-debtor to permit the debtor to assume the lease. The court noted that the phase "stated term" is not defined in the Code.

The Court rejected the argument that "stated term" in § 362(b)(10) excluded from its scope all leases that were terminated as a result of defaults, as distinguished from leases terminated at the end of the lease term. The Court citing legislative history and floor statements, noted.

> As an extension of this argument, [party] suggests, that this case does not fall within the exceptions to the automatic stay outlined in 11 U.S.C § 362(b)(10), because the lease terminated prematurely, and not at the expiration of its stated term. Thus, reasons DiRenzo, the automatic stay does apply. The phrase "stated term," of course, is not defined in the Code. We do not accept DiRenzols facile analysis that "stated term" excludes from its scope all leases that have been terminated as a result of defaults. We believe that the floor (statements from the Senate suggest that a broader definition was intended, one which would clearly include in the category of cases not covered by the stay leases terminated as a result of default. We note parenthetically that our analysis may [10] supported by the fact that none of the cases cited by the parties and decided subsequent to the effective date of the 1984 amendments has applied DiRenzo's § 362(b)(10) analysis.

_____

[10] Of course, these cases may have involved other issues, but we find it significant that DiRenzo's § 362(b)(10) analysis was not applied by any of these courts. _See e.g., In re DeSantis_, 66 B.R 998 15 B.C.D. 229 Bankr-ED. Pa. 1986 (whether the lease had been terminated by state court proceedings prior to the bankruptcy leaving debtors with no § 541 property or no assumable interest); _In re Inc._, 52 B.R. 463 (whether lease expired by its own terms upon failure to tender delay rentals); _In re Crabb,_ 48 B.R. 165, 12 C.B.C,2d 704 (Bankr D. Mass. 1985) (whether interest of lessee expired pursuant to lease terms post- petition). We must reject DiRenzo's argument that § 362(b)(10) "codified" the pre-1984 amendment cases cited

562398v1/19-20

U.S. Bankruptcy Court - Hawaii  #19-00227  Dkt # 44  Filed  05/29/19  Page 6 of 42

by Tri County. Indeed, these cases suggest that the Trigg analysis is unaffected by § 362(b)(10).

80 B.R. 319-20.

In *In re Triangle Laboratories, Inc., 663 F.2d 463 (3rd Cir. 1981)*, the court wrote,

> This interpretation of section 365(e)(i) is consistent with the recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's assets. See *In re Commodity Merchants. Inc.*, 538 F.2d 1260. 1263 (7th Cir. 1976); *In re GSVC Restaurant Corp., 10 B.R. 302 (S.D.N.Y. 1980); In re Youngs, 7 B.R. 69, 71 (Bankr. ct. D. Mass. 1980); In re Mimi's of Atlanta, Inc., 5 B.R. 623. 627-29 (Bank. N.D. Ga. 1980), aff'd.* and remanded, 11 B.R. 710 (N.D. Ga. 1961); *In re Bronx-Westchester Mack Corp., 4 B.R. 730, 731 (Bankr. Ct. S.D.N.Y. 1980)*; Fogel, Executory Contracts and Unexpired Leases in the Bankruptcy Code, 64 Minn. L. Rev. 341, 346 (1980). As the court observed in *In re Butchman, 4 B.R. 379 381 (Bankr. Ct. S.D.N.Y. 1982)*. When a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow." *See also* Bank of Marin v. England*, 385 U.S. 99, 101 (1966)* trustee succeeds only to such rights as the bankrupt possessed").

In *In re Mimi's of Atlanta, Inc., 5 B.R. 623. 627-29 (Bank. N.D. Ga. 1980)*, the court noted,

> Several courts, including the Fifth Circuit Court of Appeals, have recognized that lease agreements terminated prior to bankruptcy for reasons other than the operation of ipso facto clauses are not, as a general rule, assumable executory contracts.

On the basis of his research of the legislative history behind the new Bankruptcy Code, one commentator has taken the position that this precedent which generally refuses to resurrect terminated agreements was adopted in the new Bankruptcy Code.

When lease agreements have been terminated, they cease to be assumable under § 365 of the Code. Professor Countryman's analysis of executory contracts, which has been discussed and adopted by several courts, supports the conclusion that once future obligations no longer continue, i.e., once the agreement is terminated, there is no executory agreement. Similarly, Professor Williston has stated that: "all contracts are to a greater or less extent executory when they cease to be so, they cease to be contracts." 1 Williston on Contracts § 14 (3d Ed. 1957). Thus, if there is no agreement because of a termination, there is no executory interest which would make the agreement assumable.

The lease provides at Article 6,

### 6. MAINTENANCE AND REPAIR OF IMPROVEMENTS:

(a) Commencing on the date of this Lease, Lessee will at Lessee's own expense, during the whole of said term cause to be made, built, maintained and repaired the Improvements in good, safe and sanitary condition and all fences, sewers, drains, roads, walls, curbs, sidewalks, and parking areas and other appurtenances which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the Premises or any part thereof. Without limiting the generality of the foregoing, Lessee shall maintain the roof, structure and glass, roads, sidewalks, parking areas, landscaping and other improvements on the Premises.

The jury found that the Debtor's maintenance and repair were so deficient so as to amount to a pre-petition default, thereby terminating the lease, and thereby preventing the Debtor from assuming the terminated lease.

In this case, with the termination of the lease by virtue of the jury verdict and the on-going default by the pre-petition lessee, the debtor is barred from

assuming the lease post-petition. Thus, the only apparent reason for the filing of the Chapter 11 petition on February 25, 2019 was to delay of the entry of the judgment, jury verdict by Judge Crabtree.

Judge Jon J. Chinen's statement in *In re Pioneer Lumber Inc.*, *127 B.R. 248, 250-51 (Bankr.D. Hawaii)* is an example of why the Order of Judge Crabtree should be considered entered *"nunc pro tunc"* to pre-petition. As Judge Chinen wrote,

CONCLUSIONS OF LAW

[1] Filing a bankruptcy petition simply to forestall and delay a state court action with no intention to effectuate a legitimate reorganization constitutes an abuse of the Bankruptcy Code. *See In re Indian Rocks Landscaping of Indian Rocks Beach, Inc., 77 B.R. 909 (Bkrtcy.M.D.Fla.1987).*

[2] Likewise, the filing of a bankruptcy petition to circumvent the orders or proceedings of other courts constitutes an independent ground for finding bad faith. *In re Eighty South Lake, Inc., 63 B.R. 501 (Bkrtcy.C.D.Cal.1986), Setzer v. Hot Productions, Inc., (In re Setzer), 47 B.R. 340 (Bkrtcy. E.D.N.Y. 1985).*

[3] In the instant case, Mr. Thomason in his affidavit attached to his Memorandum filed on November 30, 1990, acknowledged

Although the motions pending in the district court case which involved the moving parties was part of the cause of the filing of the Chapter 11, it was not the sole cause nor was it the immediate cause. The immediate cause was the pending commencement of trial in the Clarke action.

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed 05/29/19   Page 9 of 42

On the basis that (1) the ground lease was terminated on its own terms pre-petition by the Debtor's violation of Article 6, and the jury verdict, as per Article 14, Surrender, the improvements reverted to Ebbtide LLC upon the termination of the ground lease. Since the Debtor cannot assume the terminated leases post-petition, there is no prospect of rehabilitation and the case must be dismissed since the Debtor neither has a leasehold interest or any interest in the improvements on the premises after the state court jury's termination of the Ebbtide LLC lease.

DATED: Honolulu, Hawaii, May 29, 2019.

_____

JERROLD K. GUBEN
RANDOLPH R. SLATON
Attorneys for Movant
EBBTIDE, LLC



**TITLE GUARANTY OF hAWAII**
INCORPORATED
235 QUEEN STREET    HONOLULU, HAWAII 96813
PHONE: (808) 533-6261    FAX: (808) 521-0221

000091      R  FULLARD LEO DUDLEY L TR
      /      R  FULLARD LEO AINSLEY A K TR
             E  HAWAIIAN EBBTIDE HOTEL INC

TITLE GUARANTY OF HAWAII, INCORPORATED

HEREBY CERTIFIES THAT THIS IS A TRUE COPY

OF THE ORIGINAL DOCUMENT RECORDED

REGULAR SYSTEM DOCUMENT NO. **2001-000091**

ON **JANUARY 02, 2001** AT **8:01 A.M.**

BY: _____

DATE OF RECORDING : JANUARY 02, 2001

DESCRIPTION       : LEASE 3295/312 CT $1865.

DOCUMENT TYPE     : AM L

FILE 70466  RCS

U.S. Bankruptcy Court - Hawaii   #19-00227   Dkt # 44   Filed  05/29/19   Page 11 of 42

| LAND COURT | REGULAR SYSTEM |
|---|---|

AFTER RECORDATION, RETURN BY:  MAIL (✓) PICK-UP ( ) TG: ⎯⎯704⎯⎯⎯ *RS-3*

MR BOB TANAKA
BOB TANAKA, INC.
1055 KALO PL
STE 200
HONOLULU, HI 96826

TGE: _AO-101-2749_
BARBARA PAULO

Total No. of Pages: ~~30~~ 31

TMK No. (1) 2-6-23-64

## AMENDMENT AND RESTATEMENT OF LEASE

Lessor: **DUDLEY LEINANI FULLARD-LEO**, as Trustee of The Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995 and **AINSLEY A.K. FULLARD-LEO**, as Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992

Lessor's address: in care of Savio Realty, Ltd. Better Homes and Gardens at 931 University Avenue, Suite 105, Honolulu, Hawaii 96826

Lessee: **HAWAIIAN EBBTIDE HOTEL, INC.**
Lessee's address: in care of Hawaii First Inc.
900 Fort Street Mall, Suite 1220
Honolulu, Hawaii 96813

Fullard:001

## AMENDMENT AND RESTATEMENT OF LEASE

THIS AMENDMENT AND RESTATEMENT OF LEASE is made and entered into this 2̲1̲ s̲t̲ day of D̲e̲c̲e̲m̲b̲e̲r̲ 20̲0̲0̲, but effective as of the date of recordation hereof, by and between DUDLEY LEINANI FULLARD-LEO, as Trustee of The Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995 and AINSLEY A.K. FULLARD-LEO, as Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992 (collectively, "Lessor"), and HAWAIIAN EBBTIDE HOTEL, INC., a Hawaii corporation, ("Lessee");

## WITNESSETH:

WHEREAS, Bishop Trust Company, Limited, Trustee under Deed of Trust made by Gertrude T. Curry, dated February 10, 1956, recorded in the Bureau of Conveyances of the State of Hawaii in Liber 3076 at Page 194, as lessor, and Richard K. Ho, Edward Y. H. Leong, Philip A. Voto and Mitsuyuki Kudo, as Co-Tenants in Equal Shares, as lessee, entered into that certain Indenture of Lease dated May 31, 1957 (as of May 1, 1957) recorded in said Bureau in Liber 3295 at Page 312;

WHEREAS, the interest of Richard K. Ho, Edward Y. H. Leong, Philip A. Voto and Mitsuyuki Kudo, as lessee under said Indenture of Lease was assigned, by mesne assignments, to Hawaiian Ebbtide Hotel, Inc., a Hawaii corporation by instrument dated June 15, 1963, recorded in said Bureau in Liber 4540 at Page 237, and consent thereto was given by Bishop Trust Company, Limited, Trustee as aforesaid, by instrument dated June 25, 1963, recorded in said Bureau in Liber 4540 at Page 244;

WHEREAS, Robert McCorriston, Jr., as Trustee under that certain unrecorded Revocable Living Trust Agreement dated June 14, 1985, with full powers to lease, convey, mortgage and other powers set forth therein, and Peter G. Drewliner (also known as Peter George Drewliner), as Trustee under that certain unrecorded Peter G. Drewliner Declaration of Trust dated October 24, 1986, a short form of which is dated October 24, 1986, and recorded in Liber 20385 at Page 549, succeeded to the interest of Bishop Trust Company, Limited, Trustee as aforesaid, by Deed dated August 5, 1985, recorded in said Bureau in Liber 18851 at Page 388 and by Deed dated October 24, 1986, recorded in said Bureau in Liber 20385 at Page 555, respectively;

WHEREAS, the fee simple interest in the property demised under said Indenture of Lease, was acquired by Hawaiian Ebbtide Hotel, Inc. by Limited Warranty Deed by Robert McCorriston, Jr., as Trustee as aforesaid, and Peter G. Drewliner, as Trustee as aforesaid, as grantor, in favor of Hawaiian Ebbtide Hotel, Inc., as grantee, which Limited Warranty Deed is to be recorded in said Bureau prior to the recordation hereof;

WHEREAS, the lessor's interest in and to said Indenture of Lease has been or will be assigned to Hawaiian Ebbtide Hotel, Inc. by Assignment of Lessor's Interest in Indenture of Lease, by and between Robert McCorriston, Jr., as Trustee as aforesaid, and

U.S. Bankruptcy Court - Hawaii #19-00227 Dkt # 44 Filed 05/29/19 Page 13 of 42

Fullard.001

Peter G. Drewliner, as Trustee as aforesaid, as assignor, and Hawaiian Ebbtide Hotel, Inc., as assignee, which Assignment of Lessor's Interest in Indenture of Lease is to be recorded in said Bureau prior to the recordation hereof;

WHEREAS, the fee simple interest in the property demised under said Indenture of Lease has been or will be acquired by Dudley Leinani Fullard-Leo, as Trustee as aforesaid, and Ainsley A.K. Fullard-Leo, as Trustee as aforesaid, by Warranty Deed by Hawaiian Ebbtide Hotel, Inc., as grantor, in favor of Dudley Leinani Fullard-Leo, as Trustee as aforesaid, and Ainsley A.K. Fullard-Leo, as Trustee as aforesaid, as grantee, which Warranty Deed is to be recorded in said Bureau prior to the recordation hereof;

WHEREAS, the lessor's interest in and to said Indenture of Lease has been or will be assigned to Dudley Leinani Fullard-Leo, as Trustee as aforesaid, and Ainsley A.K. Fullard-Leo, as Trustee as aforesaid by Assignment of Lessor's Interest in Lease by and between Hawaiian Ebbtide Hotel, Inc., as assignor, and Dudley Leinani Fullard-Leo, as Trustee as aforesaid, and Ainsley A.K. Fullard-Leo, as Trustee as aforesaid, as assignee, which Assignment of Lessor's Interest in Indenture of Lease is to be recorded in said Bureau prior to the recordation hereof; and

WHEREAS, Dudley Leinani Fullard-Leo, as Trustee as aforesaid, and Ainsley A.K. Fullard-Leo, as Trustee as aforesaid, (collectively, the "Lessor") and Hawaiian Ebbtide Hotel, Inc., (the "Lessee") are desirous of amending and restating said Indenture of Lease (the "Original Indenture of Lease") in its entirety;

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and intending to be legally bound hereby, Lessor and Lessee hereby agree that the covenants, conditions, restrictions, reservations, agreements and other provisions set forth hereinafter shall govern the relationship of Lessor and Lessee as of the date of recordation hereof and that the Original Indenture of Lease, therefore, as of the date of recordation hereof (the "Effective Date"), is hereby amended and restated in its entirety as follows (said Original Indenture of Lease, as amended and restated in its entirety shall be referred to as the "Lease"):

## 1. PREMISES:

Lessor hereby leases to Lessee and its successors and assigns, and Lessee hereby leases from Lessor, subject to the provisions of this Lease, all of that certain land situated in Honolulu, Hawaii, and more particularly described in *Exhibit A* attached hereto (hereinafter referred to as the "Land"), together with all rights accruing thereto including all rights, easements, privileges and appurtenances and subject to the encumbrances set forth in *Exhibit A* (hereinafter referred to, together with the Land, as the "demised premises" or "Premises").

## 2. TERM:

(a) The covenants, conditions, restrictions, reservations, agreements and other provisions set forth herein take effect on the Effective Date. The term of this Lease shall end on the date immediately preceding the twenty-fifth (25th) anniversary of the Effective Date, unless said term shall be sooner terminated as hereinafter provided.

(b) At the end of the term of this Lease, Lessee will deliver to the Lessor possession of the Premises in accordance with paragraph 14 of this Lease.

## 3. RENT; NO SECURITY DEPOSIT:

Lessee shall pay to Lessor in equal monthly installments each in advance on the first day of each and every month during said term, net over and above all real property taxes, assessments and other charges hereunder payable by Lessee, rent as follows:

(a) *Annual and Monthly Lease Rent for Initial Ten-Year Period*. For the period commencing on the Effective Date and ending on the date immediately preceding the tenth (10th) anniversary of the Effective Date, the annual lease rent shall be ONE HUNDRED NINETY-TWO THOUSAND AND NO/100 DOLLARS ($192,000.00), payable on the first day of each month in advance in twelve equal installments of SIXTEEN THOUSAND AND NO/100 DOLLARS ($16,000.00) each.

(b) *Annual and Monthly Lease Rent for Second Ten-Year Period and Final Five-Year Period*. For the next ten-year period commencing on the tenth (10th) anniversary of the Effective Date and ending on the date immediately preceding the twentieth (20th) anniversary of the Effective Date, and for the final five-year period commencing on the twentieth (20th) anniversary of the Effective Date and ending on the date immediately preceding the twenty-fifth (25th) anniversary of the Effective Date, the annual lease rent shall be equal to the amount obtained by multiplying: (i) seven percent (7%) by (ii) the fair market value of the Land. Such rent shall be payable on the first day of each month in advance in twelve equal installments.

For purposes of this subparagraph (b), the fair market value of the Premises for each period described above shall be determined by mutual agreement between Lessor and Lessee at least ninety (90) days immediately prior to the commencement of the period in question. If Lessor and Lessee are unable to agree on the fair market value of the Premises, either party may give to the other written notice of a desire to have an arbitration by three (3) appraisers to determine said fair market value in the manner provided for by Chapter 658, Hawaii Revised Statutes, as the same may be amended, and shall name one (1) of the appraisers in said written notice, whereupon the other party shall, within ten (10) days after receipt of such notice, name a second appraiser, and in case of failure so to do the party who has already named an appraiser may have the second appraiser selected or appointed by one of the judges of the Circuit Court of the First Circuit of the State of Hawaii, and the two (2) appraisers so appointed in either manner shall select and appoint a third appraiser, and in the

event the two (2) appraisers so appointed shall fail to appoint the third appraiser within ten (10) days after the naming of a second appraiser, either party may have the third appraiser selected or appointed by one of said judges and the three (3) appraisers so appointed shall thereupon proceed to determine the annual lease rent on the basis above set forth, and the decision and award of any two (2) of them shall be final, conclusive and binding upon all parties unless the same shall be vacated, modified or corrected, all as provided in said Chapter 658, Hawaii Revised Statutes, as the same may be amended. The appraisers shall be designated members of the Appraisal Institute or the successors thereof having not less than ten (10) years' experience in appraising land in the State of Hawaii, and shall have all the powers and duties prescribed by said Chapter 658, and judgment may be entered upon any such decision and award in said Circuit Court as provided in said Chapter 658. For purposes of determining the fair market value of the Premises, the appraisers shall value the Premises as if the same were not encumbered by this Lease and shall assume that the Premises are vacant of any buildings or improvements constructed by or for the Lessee. The appraisers shall value the Premises as if they are available for development to the highest and best use available for the Premises; provided, however, in the event that the actual use of the Premises is greater than the development that would be available if the Premises were vacant (e.g. existing use of the Premises is a non-conforming and greater use than the use available under then existing zoning and other land use regulations), then such actual use shall be deemed to constitute the highest and best use available for the Premises. In all cases of arbitration, Lessor and Lessee shall each pay the expense of their own attorney's, appraiser's and witnesses' fees, and all other expenses of such arbitration shall be divided equally between Lessor and Lessee. If and whenever the fixing of such rental is under arbitration, Lessee, pending the determination thereof, shall continue to pay the same rental payable during the preceding rental period and shall promptly pay the deficiency, if any, upon the conclusion of the arbitration proceedings, together with interest accrued on such deficiency at the rate of twelve percent (12%) per annum. It is understood, however, that the agreed-upon or arbitrated rent for each period shall not in any event be less than the rental for the immediately preceding period.

(c)     *Additional Rent.* Lessee shall pay to the Lessor as additional rent, together with each payment of rent under subparagraphs (a) and (b) above and all other payments to be made by Lessee hereunder, to the extent such payments are subject to the State of Hawaii general excise tax or any other similar tax on gross income, as the same may be amended, an amount which when added to such rental or other payments shall yield to the Lessor after deduction of all such tax payable by Lessor with respect to such rental and other payments, a net amount which Lessor would have realized from such rental and other payments had no such tax been imposed. During such time as the Hawaii general excise tax remains at its present rate of four percent (4%) and no other taxes are imposed upon the receipt by Lessor of the rents reserved, other than net income taxes, such additional payment shall be 4.166% of the rent reserved in this Lease.

(d)     *Payments of Rental.* All payments of rental and other payments required to be made to Lessor shall be in lawful money of the United States of America and shall be paid to Lessor, in care of Savio Realty, Ltd. Better Homes and Gardens at 931 University

4

Avenue, Suite 105, Honolulu, Hawaii 96826 or to such other person and/or at such other place as Lessor may designate from time to time in writing.

(e)     *Net Rental*. This Lease shall be deemed and construed to be a "net lease" and Lessee shall pay to Lessor, absolutely net throughout the term of this Lease, the rental, and other payments hereunder, free of any charges, assessments, impositions or deductions of any kind and without abatement deduction or set-off, other than those herein expressly provided for, and under no circumstances or conditions, whether now existing or hereafter arising, or whether beyond the present contemplation of the parties, shall Lessor be expected or required to make any payment of any kind whatsoever or be under any other obligation or liability hereunder except as herein otherwise expressly set forth.

(f)     *No Security Deposit*. No security deposit shall be required of Lessee under this Lease.

### 4.     USE OF PREMISES:

(a)     Lessee has leased the Premises after a full and complete examination thereof, as well as the title thereto and its present uses and non-uses, and Lessee accepts the same without any representation or warranty, express or implied in fact or by law, by Lessor and without recourse to Lessor, as to the title thereto, the nature, condition or usability thereof or the use or uses to which the Premises or any part thereof may be put. Lessor shall not be required to furnish any services or facilities or to make any repairs or alterations in or to the Premises, throughout the term of this Lease, Lessee hereby assuming the full and sole responsibility for the condition, operation, repair, replacement, maintenance and management of the entire Premises and of all buildings and improvements situated on the Premises (the "Improvements").

(b)     Lessee shall observe and perform the easements, covenants, restrictions and agreements applicable to the Premises that are listed in *Exhibit A* attached hereto and all other governmental reservations and restrictions applicable to the Premises or the Improvements (collectively, the "Encumbrances") and shall indemnify and save harmless Lessor from and against any and all loss, damages, obligations, liabilities, claims and demands (including without limitation, reasonable attorneys' fees) arising out of, accruing or relating to any of the Encumbrances from the date of this Lease and on written notice to Lessee of any such loss, damage, obligation, liability, claim or demand, Lessee shall at its sole cost and expense assume the full defense of any such loss, damage, obligation, liability, claim or demand and shall indemnify Lessor from any such loss, damage, obligation, liability, claim or demand.

(c)     Lessee shall not use or occupy or permit the Premises to be used or occupied, nor do or permit anything to be done in or on the Premises, in whole or in part, in a manner which would in any way violate any permit or certificate of occupancy affecting the Premises, or make void or voidable any insurance then in force with respect thereto, or which

may make it impossible to obtain fire or other insurance thereon required to be furnished by Lessee hereunder, or as will cause or be apt to cause structural injury to the Improvements or any part thereof, or as will constitute a public or private nuisance, and shall not use or occupy or permit the Premises to be used or occupied, in whole or in part, in a manner which may violate any present or future, ordinary or extraordinary, foreseen or unforeseen laws, regulations, ordinances or requirements of the federal, state or municipal governments, or of any departments, subdivisions, bureaus or offices thereof, or of any other governmental public or quasi-public authorities now existing or hereafter created, having jurisdiction in the Premises, *provided, however*, that Lessee may, in good faith, upon prior written notice to Lessor, (and wherever necessary in the name of but without expense to Lessor) and after having secured Lessor to its reasonable satisfaction by cash or by a surety company bond in an amount, in a company and in substance reasonably satisfactory to Lessor, against loss or damage, contest the validity of any such laws, regulations, ordinances or requirements and pending the determination of such contest may postpone compliance therewith, except that Lessee shall not so postpone compliance therewith as to subject Lessor to any fine or penalty or to prosecution for a crime, or to cause the Premises or any part thereof to be condemned or to be vacated. Lessee will indemnify and save harmless Lessor, in Lessor's individual as well as Lessor's fiduciary capacity, against any recovery or loss to which Lessor may be subject or which Lessor may sustain, including reasonable attorney's fees and expenses incurred by Lessor arising from any breach of this covenant or by reason of any action or proceedings which may be brought against Lessor or against the Premises, or any part thereof, by virtue of any such laws, regulations, ordinances or requirements.

(d)     Lessee will not do, permit or suffer any waste, damages, disfigurement or injury to or upon the Premises or the Improvements or any part thereof.

(e)     Lessee shall comply with and execute at its own expense during the term of this Lease, all present and future laws (including, without limitation, the Americans with Disabilities Act and all Hazardous Materials Laws, as defined below), acts, rules, requirements, orders, directions, ordinances and/or regulations, ordinary or extraordinary, foreseen or unforeseen, concerning the Premises or the Improvements or any part thereof, or the use thereof, or the streets adjacent thereto, applicable to Lessor, Lessee or sublessees thereof, or of any federal, state, municipal or other public department, bureau office or authority or of the National Board of Fire Underwriters, any local Board of Fire Underwriters, or other body having similar functions, or of any liability, fire or other insurance company having policies outstanding with respect to the Premises or the Improvements, whether or not such laws, acts, rules, requirements, orders, directions, ordinances and/or regulations require the making of structural alterations or the use or application of portions of the Premises or Improvements for compliance therewith or interfere with the use and enjoyment of the Premises, and shall protect, hold harmless and indemnify Lessor, in Lessor's individual as well as Lessor's fiduciary capacity, of and from all fines, penalties, claim or claims for damages of every kind and nature arising out of any failure to comply with any such laws, acts, rules, requirements, orders, directions, ordinances and/or regulations, the intention of the parties being with respect thereto that Lessee during the term hereby granted, shall discharge and perform all the obligations of Lessor, as well as all the obligations of Lessee, arising as

aforesaid, and save Lessor harmless therefrom, so that at all times the rental of the Premises shall be net to Lessor without deductions or expenses on account of any such law, act, rule requirement, order, direction, ordinance and/or regulation whatever may be; *provided, however*, that Lessee may, in good faith upon prior written notice to Lessor (and wherever necessary, in the name of, but without expense to, Lessor), and after having secured Lessor to its reasonable satisfaction by cash or by a surety company bond in an amount, in a company and in substance reasonably satisfactory to Lessor against loss or damage, contest the validity of any such law, act, rule, requirement, order, direction, ordinance or regulation and pending the determination of such contest, may postpone compliance therewith but not so as to subject Lessor to any fine or penalty or to prosecution for a crime, or to cause the Premises or any part thereof to be condemned or to be vacated.

(f)     Lessor shall not be responsible or liable for any damage or injury to any property, fixtures, merchandise or decorations or to any person or persons at any time on the Premises or the Improvements from steam, gas or electricity or from water, rain, or wind, whether the same may leak into, issue or flow from any part of the Improvements or from pipes or plumbing work of the same, or from any other place or quarter; nor shall Lessor be in any way responsible or liable in case of any accident or injury including death to any of Lessee's servants, employees, agents, or to any person or persons in or about the Premises or the streets, sidewalks or vaults adjacent thereto; and Lessee agrees that it will not hold Lessor in any way responsible or liable therefor and will further indemnify and hold Lessor harmless from and against any and all claims, liability, penalties, damages, expenses and judgments arising from injury to persons or property of any nature and also for any matter or thing growing out of the condition, use or occupation of the Premises, or of the streets or sidewalks adjacent thereto.

## 5.     TAXES AND UTILITY EXPENSES:

(a)     Commencing on the date of this Lease, Lessee shall pay all utility, water and sewer rates or charges imposed with respect to the Premises or any improvements thereon and Lessee shall pay all charges for sewer, water and electricity or other services furnished to the Premises or the occupants thereof during the term of this Lease.

(b)     Lessee may, in its own name, take any action deferring payment of any amount due under this paragraph 5, or contest any tax or other charge for which Lessee is responsible hereunder.  Lessor will execute any documents relating to any such action provided that Lessee shall indemnify and hold Lessor harmless from any liability, cost and expense therefor and that all expenses of any such action shall be borne by Lessee.

(c)     Any refunds or rebates of amounts paid by Lessee hereunder shall belong to Lessee and Lessor shall aid Lessee in obtaining any such refund or rebate, provided that the cost of obtaining the same shall be paid by Lessee.

(d)     Nothing in this Lease shall be construed to require Lessee to pay any inheritance, estate, successions, gift or net income taxes that are or may be imposed upon Lessor, its successors in trust or assigns.

(e)     Lessee shall pay the conveyance tax imposed by the State of Hawaii with respect to this Lease.

## 6.     MAINTENANCE AND REPAIR OF IMPROVEMENTS:

(a)     Commencing on the date of this Lease, Lessee will at Lessee's own expense, during the whole of said term cause to be made, built, maintained and repaired the Improvements in good, safe and sanitary condition and all fences, sewers, drains, roads, walls, curbs, sidewalks, and parking areas and other appurtenances which may be required by law to be made, built, maintained and repaired upon or adjoining or in connection with or for the use of the Premises or any part thereof.   Without limiting the generality of the foregoing, Lessee shall maintain the roof, structure and glass, roads, sidewalks, parking areas, landscaping and other improvements on the Premises.

(b)     Lessee shall undertake structural alterations to the Improvements only for the purpose of keeping the Improvements in good condition and repair or for the purpose of erecting new Improvements of equal or higher fair market value as the existing Improvements and in accordance with plans and specifications approved by the Lessor and the City and County of Honolulu and all governmental authorities having jurisdiction over the Premises (if such governmental approval is required).

(c)     Lessee agrees that all of Lessee's contractors shall be bondable, licensed in the State of Hawaii and capable of performing quality work. Before any work of construction or improvement on the Premises, Lessee will, if the cost of the same exceeds FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), obtain and furnish to Lessor, or cause to be obtained and furnished by the contractor or contractors performing the work, a one hundred percent (100%) performance bond and a one hundred percent (100%) labor and material payment bond, naming Lessor and Lessee as co-obligees, in form and with surety or sureties satisfactory to Lessor, guaranteeing the full and faithful performance of the construction contract and completion of such work, free and clear of all mechanics' and materialmen's liens.  Lessee shall indemnify, defend and hold harmless Lessor from and against any and all mechanics' or materialmen's liens arising from any construction on the Premises by Lessee.

(d)     Lessee will permit the Lessor and the agents of the Lessor at all reasonable times during said term to enter the Premises to determine whether Lessee is complying with the terms of this Lease.

(e)     Lessor's consent and/or approval of any plans, specifications and working drawings for Lessee's said alterations, additions or improvements shall not create any responsibility or liability on the part of Lessor for the completeness, design sufficiency, or compliance with all present and future laws, rules, orders, ordinances, directions, regulations

and requirements of federal, state, county, municipal and any other governmental agencies and authorities of said plans, specifications and working drawings.

### 7. LIENS:

Lessee shall cause to be promptly discharged any mechanic's or other lien filed against the Premises by reason of any act or omission of Lessee, provided that this paragraph 7 shall not be applicable to the lien of any mortgage. It is understood and agreed that Lessee shall have the right to contest any lien filed against the Premises. Lessee will indemnify and hold Lessor harmless from all loss, liability, cost and expense, including attorneys' fees, resulting from all such liens.

### 8. ASSIGNMENT AND SUBLETTING:

(a) Lessee shall have the right to: (1) assign, mortgage, pledge, encumber or in any manner transfer this Lease, or any part thereof, or (2) sublease the Premises, or any part thereof, or (3) sell, transfer, mortgage, pledge, lease, license or encumber the Improvements or the interest of Lessee in any lease of the Improvements or the rentals thereunder, without the prior written consent of Lessor in each instance; *provided, however, that* the following requirements shall be met:

(i) each such sublease, assignment, mortgage, pledge or encumbrance and each renewal of a sublease shall be subject and subordinate to this Lease and the rights of Lessor hereunder.

(ii) If the Premises or any part thereof be subleased, then in the event of Lessee's default, Lessor may, and is hereby empowered at any time to collect rent from such lessees, sublessees and occupants of the Improvements so long as such default or any other default shall continue, and to apply the same to the curing of any default hereunder in any order of priority Lessor may elect, any unexpended balance to be applied by Lessor against any rental obligations subsequently becoming due.

(iii) If this Lease is assigned, whether or not in violation of the provisions of this Lease, Lessor may and is hereby empowered to collect rent from the assignee. In such event, Lessor may apply the net amount received by it to the rental and other payments herein reserved or provided for, and no such collection shall be to release Lessee from the further performance of the covenants herein contained on the part of Lessee.

(iv) The making of any assignment, mortgage, pledge, encumbrance or subletting, in whole or in part, shall not operate to relieve Lessee herein named from its obligations under this Lease and, notwithstanding any such assignment, mortgage, pledge, encumbrance or subletting, Lessee herein named shall remain liable for the payment of all rental and other charges and for the due performance of all the covenants, agreements, terms and provisions of this Lease to the full end of the term of this Lease, and whether or not there shall have been any prior termination of this Lease by summary proceedings or otherwise.

(v)     Each and every assignee, including any purchaser of the Lease under a foreclosure of any mortgage on this Lease, shall immediately be and become and remain liable for the payment of the rental and other charges payable under this Lease, and for the due performance of all the covenants, agreements, terms and provisions of this Lease on Lessee's part to be performed to the full end of the term of this Lease and each and every provision of this Lease applicable to Lessee shall also apply to and bind every such assignee and purchaser with the same force and effect as though such assignee or purchaser were Lessee named in this Lease. No transfer to such assignee or to such purchaser shall be binding upon Lessor unless such assignee or purchaser shall deliver to Lessor a recordable instrument which contains a covenant or assumption by said assignee or purchaser to such effect, but the failure or refusal of such assignee or purchaser to deliver such instrument shall not release or discharge such assignee or purchaser from its obligations and liability as above set forth.

## 9.     INDEMNITY AND INSURANCE:

(a)     Lessee will protect, defend, indemnify and save harmless Lessor from and against all losses, liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorney's fees and expenses) imposed upon or incurred by or asserted against Lessor by reason of (1) Lessor's ownership of the Premises or any interest therein, or Lessor's receipt of any rent or other sum therefrom (except that Lessee shall not be responsible for any net income tax imposed upon Lessor with respect thereto), (2) any accident or injury to or death of persons or loss of or damage to property occurring on or about the Premises or the Improvements or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, (3) any use, non-use or condition of the Premises or the Improvements or any part thereof or the adjoining sidewalks, curbs, vaults and vault space, if any, streets or ways, (4) any failure on the part of Lessee to perform or comply with any of the terms of this Lease, or (5) performance of any labor or service or the furnishing of any materials or other property in respect of the Premises or the Improvements or any part thereof. In case any action, suit or proceeding is brought against Lessor by reason of any such occurrence, Lessee, upon Lessor's request, will at Lessee's expense resist and defend such action, suit or proceeding, or cause the same to be resisted and defended by counsel designated by Lessee and approved by Lessor. The obligations of Lessee under this subparagraph, and which are incurred by Lessee while this Lease is in existence, shall survive any termination of this Lease.

(b)     Without limiting the generality of subparagraph (a) above, Lessee shall protect, defend, indemnify and save harmless Lessor from and against any losses, liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including, without limitation, reasonable attorney's fees and expenses) directly or indirectly arising out of or attributable to the use, generation, manufacture, treatment, handling, refining, production, processing, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials, as defined hereinafter (in violation of any Hazardous Materials Laws, as defined below), on, under or about the Premises, which arises during the term of this Lease, or which results from any act of Lessee, including without limitation, all foreseeable and unforeseeable consequential damages, all fines which may be imposed and the costs of any required or

necessary repair, clean up or detoxification of the Premises, and the preparation and implementation of any closure, remedial or other required plans, and all reasonable costs and expenses incurred by the Lessee in connection therewith, including without limitation, reasonable attorneys' fees. The agreements and obligations of Lessee under this subparagraph shall survive, and shall continue to be binding upon Lessee notwithstanding the termination, expiration or surrender of this Lease.

The term "Hazardous Materials" shall mean all flammable explosives, radioactive materials, asbestos, organic compounds known as polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances or related materials, including, without limitation, any substances defined as or included in the definition of "hazardous substances," "hazardous wastes," "hazardous materials," or "toxic substances" under Hazardous Materials Laws. "Hazardous Materials Laws" shall mean any federal, state or local laws, ordinances or regulations, now or hereafter in effect, relating to environmental conditions, industrial hygiene or Hazardous Materials on, under or about the Premises and improvements thereon, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Materials Transportation Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., the Clean Air Act, 42 U.S.C. Section 7401, et seq., the Toxic Substances Control Act, 15 U.S.C. Sections 2601 through 2629, the Safe Drinking Water Act, 42 U.S.C. Sections 300f through 300j, Hawaii Revised Statutes Chapter 128D and any other federal, state and local laws and ordinances and the regulations now or hereafter adopted, published and/or promulgated with respect to Hazardous Materials.

(c)     From and after the date of this Lease, Lessee will, at its sole cost and expense, keep and maintain policies of:

(i)     insurance on the Improvements against loss or damage by fire and against loss or damage by other risks now embraced by the so-called broad extended coverage endorsement in amounts at all times sufficient to prevent Lessor or Lessee from becoming a co-insurer under the terms of the applicable policies, but in any event in an amount not less than the then full insurable value of the Lessee's Improvements. The term "full insurable value" shall mean actual replacement value (exclusive of cost of excavation, foundations and footings). Such "full insurable value" shall be determined from time to time at the request of Lessor, by one of the insurers or, at the option of Lessee, by an appraiser, engineer, architect or contractor approved in writing by Lessor (which approval shall not be unreasonably withheld) and paid by Lessee. No omission on the part of Lessor to request any such determination shall relieve Lessee of any of its obligations under this paragraph 9;

(ii)     public liability insurance protecting and indemnifying Lessee, and Lessor, in Lessor's individual as well as Lessor's representative capacity, with minimum limits of not less than FIVE MILLION AND NO/100 DOLLARS ($5,000,000.00) for injury to one or more persons, and also a policy of insurance in the sum of TWO MILLION AND NO/100

DOLLARS ($2,000,000.00) against the claims of third persons for property damage with a not more than FIVE THOUSAND AND NO/100 DOLLAR ($5,000.00) deductible;

    (iii)    boiler and pressure vessel insurance including pressure pipes, if the Improvements contain boiler equipment or pressure pipes;

    (iv)    war risk insurance upon the Improvements as and when such insurance is obtainable from the United States Government or any agency or instrumentality thereof, and a state of war or national or public emergency exists or threatens, in an amount not less than the full insurable value thereof;

    (v)    rent, or use and occupancy or rental value insurance in an amount at least sufficient to meet the payments for two years of the rental provided for in paragraph 3, and the debt charges on any permitted mortgage, which insurance shall be payable to Lessor, Lessee and the holder of any permitted mortgage, as their interests may appear, but which policies shall be delivered to and held by Lessor or the holder of such permitted mortgage and, in the event that the Improvements or any substantial portion thereof, shall be destroyed or seriously damaged, Lessee shall assign to Lessor the interest of Lessee in said policies and all proceeds thereunder, which proceeds, when collected in cash by Lessor, shall be held in trust and applied to the payment of any debt charges then due and payable under any permitted mortgage, and to the performance by Lessee of all the covenants, agreements, terms and provisions of the Lease until the repair, restoration or reconstruction of the Improvements shall be completed as provided for in paragraph 6 hereof;

    (vi)    flood insurance, if the Premises are located in a flood hazard area or area of similar characterization; and

    (vii)    such other insurance on the Improvements and in such amounts as may from time to time be reasonably required by Lessor against other insurable hazards which at the time are commonly insured against in the case of premises similarly situated.

    Each policy required hereunder is to be written by an authorized insurer in the State of Hawaii with a Best's rating of A (VII) or higher. If the limits of available liability coverage required herein become substantially reduced as a result of claim payments, Lessee shall purchase insurance to reinstate the limits of liability coverage required by this Lease.

    Lessee shall cause certificates of insurance evidencing all of the insurance required to be maintained by Lessee under this Lease to be delivered to Lessor prior to commencement of this Lease and thereafter at least ten (10) days prior to the expiration of each policy required to be maintained under this Lease.

## 10.    CONDEMNATION:

    (a)    If the whole of the Premises shall be taken or condemned by any competent authority for any public use or purpose under any statute or by right of eminent domain, or by a private purchase in lieu thereof under threat of such eminent domain

U.S. Bankruptcy Court - Hawaii  #19-00212  Dkt # 44  Filed  05/29/19  Page 24 of 42

proceedings, then in either of such events, this Lease shall expire on the date when the Premises shall be so taken and the rent shall be prorated as of that date. Nothing contained herein shall prevent Lessor and Lessee from prosecuting claims in any condemnation proceedings for the value of their respective interests. In the event that part of the Premises shall be taken or condemned and the part so taken shall include any portion of the Improvements on the Premises and the part not so taken cannot be practically and economically used or converted for use by Lessee for the purposes permitted by this Lease, Lessee may elect to terminate this Lease as of the date possession shall be taken by such authority. Such notice of election to terminate shall be given in writing to Lessor within ninety (90) days after official notice to Lessee of the portion to be taken. In the event Lessee does not execute such option to terminate this Lease, or if part of the Premises shall be taken or condemned under circumstances whereby Lessee does not have such option, then, and in either of such events, the rental for the balance of the term of this Lease shall be abated and adjusted in an equitable manner, effective on the date of final order of condemnation or the date the condemning authority takes possession, whichever is earlier.

(b)    If any portion of the Premises is condemned by any governmental entity for any use or purpose under any statute or otherwise, or by right of eminent domain, or by private purchase in lieu thereof under threat of such eminent domain proceedings, then in either of such events: (1) all proceeds for the fee interest shall be paid to and be the sole property of Lessor; and (2) all proceeds for the Improvements shall be paid as follows:

(i)    the interest of Lessor therein shall be a proportionate amount thereof in the ratio which the expired portion of the term of this Lease bears to the original twenty-five year term of this Lease; and

(ii)    the Lessee's interest therein shall be the balance of such compensation and damages.

(c)    The interest of any leasehold mortgagees in any such compensation and damages shall be limited to the amount of and encumber only Lessee's interest therein. The respective interests and rights of two or more mortgagees in and to Lessee's interest shall be determined between them in accordance with the priority of and the unpaid amounts secured by their respective mortgages.

(d)    If at any time or times during the term of this Lease a leasehold interest in the demised premises or any part thereof shall be so taken or condemned, then, and in every such case, notwithstanding the foregoing provisions of this paragraph 10, such taking or condemnation shall not result in any reduction in rent hereunder, or give Lessee any right to terminate this Lease with respect to any part of the Premises, or excuse Lessee from the full and faithful performance of its covenants and obligations hereunder for the payment of money, or excuse or relieve Lessee from the performance of its other covenants and obligations hereunder, except to the extent that and for so long as the performance of such other covenants and obligations shall be rendered impossible by reason of the loss by Lessee of possession of such part of the Premises subject to such taking or condemnation; but in every such case of

Pullard 001

taking or condemnation of a leasehold interest, Lessee shall be entitled to claim and recover from the condemning authority its damages sustained by reason thereof, and all compensation and damages payable for or on account of such taking or condemnation of any part of the leasehold interest of Lessee hereunder shall be payable to and be the sole property of Lessee.

As used in this paragraph 10, the terms "taken or condemned", "condemnation" and "taking or condemnation" shall also mean and pertain to the sale of the Premises or any portion thereof under bona fide and imminent threat or likelihood of condemnation by proper condemning authority for proper public purposes.

## 11.    DAMAGE OR DESTRUCTION:

(a)    If, at any time during the term of this Lease, the Improvements or any part thereof shall be damaged or destroyed by fire or other casualty (including any casualty for which insurance coverage was not obtained or obtainable) of any kind or nature, ordinary or extraordinary, foreseen or unforeseen, Lessee, at its sole cost and expense, and whether or not the insurance proceeds, if any, shall be sufficient for the purpose, shall proceed with reasonable diligence (subject to a reasonable time allowance for the purpose of adjusting such loss) to repair, alter, restore, replace or rebuild the same as nearly as possible to its value, condition and character immediately prior to such damage or destruction subject to such changes or alterations as Lessee may elect to make in conformity with the provisions of paragraph 6 hereof. Such repairs, alterations, restoration, replacement or rebuilding, including such changes and alterations as aforementioned and including temporary repairs or the protection of other property pending the completion of any thereof, are sometimes referred to in this paragraph 11 as the "Work".

(b)    Except as otherwise provided in this paragraph 11, the conditions under which any repairs, alterations, restoration, replacement or rebuilding Work are to be performed and the method of proceeding with and performing the same shall be governed by all of the provisions of paragraph 6 of this Lease.

(c)    All insurance money paid to Lessee on account of such damage or destruction under the policies of insurance provided for in paragraph 9 hereof, less the cost, if any, incurred in connection with the adjustment of the loss and the collection thereof (herein sometimes referred to as the "insurance proceeds"), shall be applied to the payment of the cost of the Work to the extent such insurance proceeds shall be sufficient for the purpose and shall be paid out to or for the account of Lessee from time to time as such Work progresses. All sums so paid to Lessee and any other insurance proceeds received or collected by or for the account of Lessee (other than by way of reimbursement to Lessee for sums theretofore paid by Lessee) shall be held by Lessee in trust for the purpose of paying the cost of such Work. Upon receipt by Lessor of evidence reasonably satisfactory to it that the Work has been completed and paid for in full and that there are no liens on the Premises as a result thereof, Lessee may retain any remaining balance of said insurance proceeds. If the insurance proceeds received by Lessee shall be insufficient to pay the entire cost of the Work, Lessee shall supply the amount of any such deficiency and shall first apply the same to the payment of the cost of

the Work before disbursement of the insurance proceeds received by Lessee. Under no circumstances shall Lessor be obligated to make any payment, disbursement or contribution towards the cost of the Work except to the extent of the insurance proceeds actually received by Lessor.

(d)     In no event shall Lessee be entitled to any abatement, allowance, reduction or suspension of rent because part or all of the Premises shall be untenantable owing to the partial or total destruction thereof, and anything herein to the contrary, no such damage or destruction shall affect in any way the obligation of Lessee to pay the rent, additional rent and other charges herein reserved or required to be paid, nor release Lessee of or from any obligation imposed upon Lessee under this Lease.

## 12.     MORTGAGES:

(a)     Prior to executing any mortgage, pledge or encumbrance affecting the Premises, Lessee shall submit to Lessor a copy of the proposed mortgage and/or other security instrument(s) and the note to be secured thereby for Lessor's information; provided, however, that any mortgage, pledge or encumbrance shall comply with the requirements of paragraph 8 of this Lease and shall be limited to Lessee's interest in the Premises and in Lessee's interest in any fixtures, equipment, installations and improvements that were constructed by or for Lessee on the Premises.

(b)     The Lessee shall, upon recordation of all documents relating to any mortgage, pledge or encumbrance covering the Premises, promptly deliver a true copy of such documents to Lessor. The mortgagee or its assigns may enforce such mortgage and acquire title to the leasehold estate in any lawful way and, pending foreclosure of such mortgage, may take possession of and rent said Premises, and, upon foreclosure thereof, may, without the consent of Lessor, sell and assign the leasehold estate by assignment in which the assignee shall expressly assume and agree to observe and perform all the covenants of Lessee herein contained, and such assignee may make a purchase money mortgage of this Lease to the assignor, provided that, upon execution of any such assignment or mortgage, a true copy thereof shall be delivered promptly to Lessor. The mortgagee of such mortgage shall be liable to perform the obligations herein imposed on Lessee only during the period such person has possession or ownership of the leasehold estate. Nothing contained in such mortgage shall release or be deemed to relieve Lessee from the full and faithful performance and observance of Lessee's covenants herein contained or from any liability for nonobservance or nonperformance thereof, nor be deemed to constitute a waiver of any rights of Lessor hereunder, and the terms, covenants and conditions of the Lease shall control in case of any conflict with the provisions of such mortgage.

(c)     During the continuance in effect of any permitted mortgage of this Lease, Lessor will not terminate this Lease because of any default on the part of the Lessee to observe and perform any of the covenants and conditions herein contained if the mortgagee or its assigns, within ninety (90) days after Lessor has mailed to the mortgagee or its assigns at the last known address thereof a written notice of intention to terminate the interest of the

Lessee under this Lease for such cause, and the mortgagee shall cure such default, if the same can be cured by the payment of money, or, if such is not the case, shall undertake in writing to perform and shall thereafter perform all the covenants of this Lease capable of performance by the mortgagee or its assigns until such time as this Lease shall be sold upon foreclosure of such mortgage. In case of such undertaking, Lessor will not so terminate within such reasonable time as may be required by the mortgagee to complete foreclosure of such mortgage or other remedy thereunder provided (i) that such remedy is pursued promptly and completed with due diligence, and (ii) that Lessor has been paid all rent and other charges accruing hereunder as the same become due, and upon foreclosure sale of this Lease, the time for performance of any obligation of Lessee then in default hereunder, other than payment of money, shall be extended by the time reasonably necessary to complete such performance by due diligence. Any default consisting of Lessee's failure promptly to discharge any lien, charge or encumbrance against said Premises junior in priority to such mortgage shall be deemed to be duly cured if such mortgage shall be foreclosed by appropriate action instituted within said ninety (90) day period and thereafter prosecuted in a diligent and timely manner.

If this Lease and the Lessee's mortgage are terminated pursuant to Section 365 of the Bankruptcy Reform Act of 1978, as amended, and the mortgagee pays all rental arrearages to the Lessor under the Lease, Lessor shall, at the mortgagee's request, enter into a new lease with the mortgagee for the remaining term of the Lease under the same terms and conditions set forth in this Lease for such remaining term except that the terms and conditions pertaining to the rights of holders of security interests shall be as set forth herein. The new lease shall be free and clear of the mortgagee's mortgage. The new lease shall be subject to the following terms and conditions:

(A) The new lease shall be for the remainder of the term of this Lease, effective as of the effective date of the rejection of this Lease, at the rent, and upon the terms, covenants and conditions of this Lease without any increase in Lessor's obligations or diminishment of Lessor's rights under this Lease;

(B) The mortgagee shall pay or cause to be paid to Lessor at the time of the execution and delivery of the new lease any and all sums which are at the time of execution and delivery thereof due under this Lease, and, in addition thereto, all reasonable expenses, including reasonable attorneys' fees, which Lessor shall have incurred by reason of the actual or deemed rejection of this Lease, involvement in any bankruptcy proceedings, and the execution and delivery of the new lease;

(C) The mortgagee or its designee shall undertake, by accepting the new lease, to perform all covenants and conditions of the new lease reasonably capable of performance by the mortgagee or its designee;

(D) The mortgagee or its designee, as the case may be, may assign the new lease provided that the assignee or sublessee of the entire Premises shall have the financial capabilities to perform all the terms and conditions of this Lease to Lessor's reasonable satisfaction;

(E)     The mortgagee or its designee under the new lease shall be entitled to and shall have the same right, title and interest in and to the Premises and the buildings and improvements thereon as Lessee had under this Lease prior to its rejection; and

(F)     The new lease made pursuant to the provisions of this Lease shall be prior to any mortgage or other lien on, or charge or encumbrance of the fee of the Premises if the same was subordinate to this Lease.

### 13.     QUIET ENJOYMENT:

Lessee, upon paying rent and complying with all the other provisions hereof, shall quietly have and enjoy the Premises during the term of this Lease without hindrance by anyone claiming by, through or under the Lessor.

### 14.     SURRENDER:

At the end of the term of this Lease or other sooner termination or cancellation of this Lease, Lessee shall peaceably deliver up to Lessor possession of the Premises hereby demised, together with all improvements upon or belonging to the same, by whomsoever made.  Upon the expiration or earlier termination of the term of this Lease, all Improvements then located on the Premises shall, with the Premises, be vacated and surrendered free of all liens by Lessee to Lessor and shall become the property of Lessor, and Lessee agrees to execute and deliver to Lessor such deeds, assignments, or other instruments of conveyance as Lessor may deem necessary to evidence such transfer of title to Lessor, it nevertheless being understood that upon expiration or termination, title to the Improvements shall automatically vest in Lessor by operation of law and no Lessee's execution of a bill of sale or assignment requested by Lessor shall in any manner be deemed a condition precedent to the automatic vesting of title. For the purpose of carrying out the provisions of this paragraph 14, Lessee hereby irrevocably constitutes and appoints Lessor its true and lawful attorney-in-fact with full power of substitution to execute, acknowledge and deliver any instruments referred to in this paragraph 14 in the name and on behalf of Lessee.  The power vested in said attorney-in-fact is, and shall be deemed to be, coupled with an interest and irrevocable.

### 15.     DEFAULTS:

(a)     If any one or more of the following events shall have occurred and shall not have been remedied as herein provided: (i) Lessee's failure to pay any installment of rent when due and the continuance of the same for a period of ten (10) days whether or not the same shall have been legally demanded, (ii) Lessee's failure to comply with any other agreement herein contained and the continuance of such failure for a period of thirty (30) days after receipt by Lessee from Lessor of notice in writing specifying the nature of such failure, then on the occurring of any of such events, the Lessor may at once enter into and upon the Premises or any part thereof in the name of the whole and at Lessor's option terminate this Lease, or, without necessity of physical entry, cancel this Lease, by prior written notice to the

Lessee at the last known address of the Lessee, or at such other address of which the Lessee has notified the Lessor in writing prior thereto if receipt of said notice (of change of address) has been acknowledged in writing by the Lessor, and thereupon take possession of the Premises and all Improvements thereon and become wholly vested with all right, title and interest of the Lessee therein, and may expel and remove from said Premises the Lessee, or those claiming under the Lessee, and their effects, all without resort to any legal process and without being deemed guilty of any trespass or becoming liable for any loss or damage which may be occasioned thereby, and without prejudice to any other remedy or right of action which the Lessor may have for collections of arrears of rent or for other breach of covenant by the Lessee, and in case of such termination of this Lease, the Lessee shall be liable to the Lessor for all loss and damage sustained by the Lessor on account of the Lessee's breach of said terms, covenants and/or conditions, and/or on account of the Premises remaining unleased or being let for the remainder of the term hereby demised for a lesser rent than that herein reserved. And in the event of such breach, the Lessor shall have the additional right to institute an action for, and obtain, immediate appointment of a receiver, upon ex parte order, without bond, to take immediate possession of the Premises, together with all improvements located thereon. Such termination may be but need not necessarily be made effective by recording or filing of record in each of the places in which this Lease is recorded or filed an affidavit thereof by Lessor or an order of the Land Court of the State of Hawaii (if title to the Premises is registered) canceling this Lease.

(b)     Whether or not the Lessor shall have taken any action above permitted, the Lessor may bring an action for summary possession in case of such default, and in any such action service of prior notice or demand is hereby expressly waived. In the event of such resumption of possession under this Lease, whether by summary proceedings or by any other means, the Lessor or any receiver appointed by a court having jurisdiction, may dispossess and remove all persons and property from the Premises, and any property so removed may be stored in any public warehouse or elsewhere at the cost of and for the account of the Lessee, and the Lessor shall not be responsible for the care or safekeeping thereof, and the Lessee hereby waives any and all loss, destruction, damages or injury which may be occasioned in the exercise of any of the aforesaid acts. The Lessor may recover from the Lessee all damages, attorneys' fees and costs which may have been incurred by the Lessor as a result of any default of the Lessee hereunder, including the expense of recovering possession. No re-entry or taking of possession of the Premises by the Lessor shall be construed as an election on the Lessor's part to terminate this Lease, unless a written notice that this Lease is terminated is given by the Lessor to the Lessee, or an order is secured stating that the Lease is terminated. The effective date of termination of this Lease shall be as of the date set forth or provided in the notice or order aforementioned, as the case may be. The Lessor may from time to time, without terminating this Lease, re-let for the account of the Lessee the Premises or any part thereof, for all or any portion of the remainder of the term to a lessee or lessees satisfactory to the Lessor, and at such rental or rentals as may, in the exercise of reasonable efforts, be obtained, with the right of the Lessor to put said Premises in good order and condition and to make reasonable alterations and repairs to facilitate such re-letting at the Lessee's expense. The Lessor shall receive such rentals and apply them, first, to the payment of the expense of recovering possession of said Premises and the re-renting thereof, together with such expense

as the Lessor may have incurred in putting the Premises in good order and condition or in making such alterations and repairs, and then to the payment of the rent due by these presents and to the fulfillment of the covenants of the Lessee, with the balance, if any, to be paid over to the Lessee, provided that the Lessee shall remain liable for any deficiency, which deficiency the Lessee agrees to pay monthly as the same may accrue. Notwithstanding any such re-letting without termination, the Lessor may at any time thereafter elect to terminate this Lease for such previous breach. Anything in this paragraph 15 to the contrary notwithstanding, in the event this Lease is terminated by the Lessor by reason of any breach thereof by the Lessee or because of any other event entitling the Lessor to so terminate as hereinabove set forth, the Lessor, at the Lessor's option, shall thereupon be entitled to recover from the Lessee liquidated damages in an amount equal to the excess, if any, of the amount of rent payable hereunder by the Lessee for or on account of the Premises for the balance of the stated term or any shorter period of time, over the reasonable rental value of the Premises at the time of such termination for the same period and on the same terms, except as to rent, as herein set forth to the extent reasonably applicable, together with the then unamortized portion of any broker's or real estate agent's commission paid by the Lessor for or in connection with the execution of this Lease (such amortization to be computed on a straight-line basis over the full term hereof). The cause of action for such damage shall accrue upon such termination. It is further understood that each and all of the remedies given to the Lessor hereunder are cumulative and that the exercise of one right or remedy by the Lessor shall not impair the Lessor's right to any other remedy.

(c)    If Lessor gives notice of any default which by its nature cannot be cured within the period specified in subparagraph (a) above, then such period shall be extended for so long as Lessee is proceeding to cure such default as soon as reasonably possible under the circumstances.

(d)    Time shall be of the essence of this Lease, and any failure to perform or observe any of the terms, conditions or covenants herein contained, within the time specified herein, shall be considered a breach of a basic condition upon which this Lease was predicated.

(e)    If the Lessee remains in possession of the Premises after the expiration of this Lease, Lessee shall occupy the Premises as tenant from month-to-month only, subject to all the terms, covenants and conditions of this Lease, including rent, insofar as the same are applicable to a month-to-month tenancy; provided, however, that during any period in which the Lessee may retain possession of the Premises as aforesaid, the rental payable by the Lessee to the Lessor for each month shall be the fair market rent therefor but not less than 1/12th of the annual rent for the last year of this term.

16.    NO WAIVERS:

Neither party hereto shall be deemed to have waived any right hereunder for failure to complain of any act or omission of the other party.

## 17.  MISCELLANEOUS:

(a)  If either party hereto shall be prevented from performing any act required hereby by any cause beyond the control of such party, then the time for such performance shall be extended by the period of such delay.

(b)  No notice hereunder shall be effective unless the same is hand delivered or sent postage prepaid by United States registered or certified mail, return receipt requested, direct to the other party at the address first mentioned above or at such other address as either party may designate by notice given in accordance with this paragraph 17.  Notice shall be deemed given on the date shown as having been received or refused by the addressee.

(c)  Either party shall, without charge and within fourteen (14) days after any request of the other, certify in writing to any person specified in such request, as to the existence, amendment or validity of this Lease, the existence of any default or counterclaim hereunder and any other matter reasonably requested.  Any such certificate may be relied upon by any party requesting it and by any person to whom the same may be exhibited.

(d)  This Lease shall be construed under and governed by the laws of the State of Hawaii.

(e)  The invalidity of any portion of this Lease shall not affect any other portion hereof.

(f)  The parties hereby acknowledge and agree that they have been advised to retain legal counsel and such other professionals as may be necessary or appropriate to advise them concerning the drafting of this Lease and their respective rights and obligations under this Lease.  Further, the parties hereby acknowledge and agree that they have retained such legal counsel and other professionals to so advise them and/or they have had full and fair opportunity to do so.

(g)  No party shall be deemed to be the drafter of this Lease and no evidentiary presumption shall be raised in favor of one party or against the other party on the grounds that such party is the draft of this Lease.

(h)  As used herein, the singular shall include the plural and the masculine gender shall include the feminine and neuter genders unless the context shall require otherwise.  Paragraph headings are for convenience and shall not be used to construe this Lease.  The terms "Lessor" and "Lessee" as used herein shall mean only the owner at the time of Lessor's or Lessee's interest herein (or any part hereof) and upon the sale or assignment of the interest of either party hereto, their successors in interest shall be deemed to be Lessor or Lessee, as the case may be.

(i)  The covenants, conditions, restrictions, reservations, agreements and other provisions set forth in this Lease shall govern the relationship of Lessor and Lessee as of the Effective Date.  This Amendment and Restatement of Lease contains the entire agreement

among the parties hereto, supersedes the covenants, conditions, restrictions, reservations, agreements and other provisions set forth the Indenture of Lease, as amended prior to the Effective Date, and any and all prior agreements. Without limiting the generality of the foregoing, Lessor shall have no liability to Lessee for any obligations of Lessor arising out of the Original Indenture of Lease, as it then existed prior to the Effective Date.

(j)     This Lease may be modified only in writing, signed by the parties hereto.

(k)     Unless otherwise expressly provided herein, the provisions of this Lease shall bind and inure to the benefit of Lessor and Lessee and their respective successors and assigns.

(l)     The defaulting party under this Lease will pay to the nondefaulting party on demand all costs and expenses including reasonable attorneys' fees incurred in enforcing any of the covenants, terms and conditions herein contained, in remedying any breach thereof, and in collecting any delinquent rent, taxes or other charges hereunder payable in connection with any litigation (other than condemnation proceedings) commenced by or against the defaulting party to which the non-defaulting party shall without fault be made a party.

(m)     Except as expressly permitted herein, no approval or consent of Lessor or Lessee required by any provision hereof shall be capriciously or unreasonably withheld, and Lessor or Lessee will not require the payment of any money thereof.

(n)     The relationship between the parties hereto is simply that of a landlord and a tenant and that nothing herein contained shall cause the parties to be partners or joint venturers.

## 18.     LIMITATION ON LIABILITY OF LESSOR:

It is expressly understood and agreed that Lessor has made no representations or warranties (other than the warranty of quiet enjoyment) in entering into this Lease, and that Lessor shall have no liability or responsibility whatsoever with respect to the condition of the Premises or the Improvements, nor shall Lessor have any responsibility to maintain insurance with respect to the same. Any insurance maintained by Lessor shall not relieve Lessee from its obligations with respect to insurance hereunder, and Lessor's insurance shall supplement and be secondary to Lessee's insurance. In addition, any liability of Lessor under this Lease shall be satisfied solely out of Lessor's in the Premises, and Lessee shall not seek recovery against or out of any other assets of Lessor.

## 19.     WAIVER AND ASSIGNMENT OF CONVERSION RIGHTS:

To the extent Lessee may lawfully do so, Lessee, for itself and its constituent members and shareholders during the term hereof, hereby waives any and all privileges or rights that may be created during the term hereof by any statute enacted by the State of Hawaii, any ordinance adopted by the City and County of Honolulu or any other law that

would enable Lessee and/or its members to convert to fee simple the leasehold interest in the Land demised by this Lease by acquiring the Lessor's interest in this Lease. In addition, Lessee, for itself and its members, hereby assigns to Lessor any such privileges or rights that may exist or may come into existence during the term of this Lease to acquire the Lessor's interest in this Lease. Lessee shall execute such instruments and undertake such actions as may be necessary or appropriate from time to time in order to evidence the foregoing waiver and/or assignment of leasehold conversion privileges or rights. Lessee hereby acknowledges that the foregoing agreement constituted an essential inducement to Lessor in acquiring the Premises from Lessee and in establishing the rent provided for in this Lease.

## 20. RIGHT OF FIRST REFUSAL:

(a) If at any time during the term of this Lease, Lessor wishes to sell Lessor's interest under this Lease or receives an offer to purchase the Premises or any part thereof, which offer Lessor wishes to accept, and provided that Lessee is not then in material default in the performance of its obligations under this Lease beyond any grace period provided for in this Lease, Lessor shall first notify Lessee in writing of Lessor's intention to accept said offer and shall send to Lessee the terms and conditions of such offer. Lessee shall have the right within thirty (30) days after receipt of Lessor's written notification to accept the terms of said offer in its own name. If Lessee shall not so elect within said thirty (30) day period, Lessor may then sell the Lessor's interest under the Lease to any other person on the offered terms or on such other terms and conditions and for such purchase price as shall be negotiated in good faith by Lessor with a prospective purchaser.

(b) Lessee's rights hereunder shall *not* apply to any of the following with respect to Lessor's interest under this Lease: (i) any mortgage, sale at foreclosure or conveyance of Lessor's interest in lieu of foreclosure; (ii) any conveyance of any part of Lessor's interest to any Affiliate of Lessor; or (iii) any conveyance of the Lessor's interest by reason of devise or bequest. As used herein, "Affiliate of Lessor" shall mean (i) any corporation, general or limited partnership, limited liability company or other entity which may own more than fifty percent (50%) of the stock of Lessor; (ii) any subsidiary corporation in which more than fifty percent (50%) of the stock is owned by Lessor; and (iii) any general or limited partnership, limited liability company or other entity in which more than fifty percent (50%) of the profits and losses are owned by the Fullard-Leo Family. As used herein, the term "Fullard-Leo Family" shall mean Dudley Leinani Fullard-Leo, Ainsley A.K. Fullard-Leo, their respective spouses, siblings and children, nieces and nephews, and their respective children (collectively called "Fullard-Leo Family Members") or any corporation, general or limited partnership, limited liability company or other entity in which Fullard-Leo Family Members own a controlling interest of more than fifty percent (50%) of the profits and losses of the entity.

(c) Lessor and Lessee agree that Lessee's rights and Lessor's obligations under this paragraph 20 shall no longer be applicable if: (i) the Lessor's interest under the Lease is transferred by Lessor to a person who is not an Affiliate of Lessor; or (ii) Lessee or an Affiliate of Lessee is no longer the owner of the lessee's interest in this Lease. As used

herein, "Affiliate of Lessee" shall mean (i) any corporation, general or limited partnership, limited liability company or other entity which may own one hundred percent (100%) of the stock of Lessee; (ii) any subsidiary corporation in which one hundred percent (100%) of the stock is owned by Lessee; or (iii) any corporation, general or limited partnership, limited liability company or other entity in which one hundred percent (100%) of the profits and losses are owned by Lessee.

(d)     In addition to the limitations on Lessee's right to purchase as set forth in subparagraphs (a) through (c) above, Lessee agrees that its rights under this paragraph 20 are indivisible from its leasehold interest in the Premises, and Lessee's right to purchase hereunder may be transferred or assigned only in conjunction with a transfer or assignment of Lessee's leasehold interest in the Premises to an Affiliate of Lessee. Any other attempted transfer or assignment of Lessee's right to purchase shall be null and void.

**- THE NEXT PAGE IS THE SIGNATURE PAGE -**

IN WITNESS WHEREOF, Lessor and Lessee have executed this Amendment and Restatement of Lease the day and year first above written.

LESSOR:

DUDLEY LEINANI FULLARD-LEO,
as Trustee as aforesaid

AINSLEY A.K. FULLARD-LEO,
as Trustee as aforesaid

LESSEE:

HAWAIIAN EBBTIDE HOTEL, INC.,
a Hawaii corporation

By

Name: Mary Simpson
Title: President

By

Name:
Title:

24

Fullard.001

STATE OF HAWAII )
) ss.:
CITY AND COUNTY OF HONOLULU )

On this 21ST day of _December_ , 2000, before me personally appeared
DUDLEY LEINANI FULLARD-LEO, as Trustee as aforesaid, to me personally known, who,
being by me duly sworn, did say he executed the foregoing instrument as his free act and
deed, and in the capacity shown, having been duly authorized to execute such instrument in
such capacity.

_____
Print or Type Name of Notary

_____
Signature of Notary
Notary Public in and for said
County and State          **BARBARA T. PAULO**
                          **Expiration Date: June 14, 2004**

My Commission Expires:

STATE OF HAWAII )
) ss.:
CITY AND COUNTY OF HONOLULU )

On this 21st day of _December_ , 20 00, before me personally appeared
AINSLEY A.K. FULLARD-LEO, as Trustee as aforesaid, to me personally known, who,
being by me duly sworn, did say he executed the foregoing instrument as his free act and
deed, and in the capacity shown, having been duly authorized to execute such instrument in
such capacity.

_____
Print or Type Name of Notary

_William T. Paulo_
Signature of Notary
Notary Public in and for said
County and State                BARBARA T. PAULO
                                Expiration Date: June 14, 2004
My Commission Expires:

STATE OF HAWAII          )
                         ) ss.
CITY AND COUNTY OF HONOLULU   )

On this 21ˢᵗ day of _December_, 2000, before me personally appeared _Mary Simpson_ and _he is_ _____, to me personally known, who, being by me duly sworn, did say that ~~they are the~~ _President_ and _____, respectively, of HAWAIIAN EBBTIDE HOTEL, INC., a Hawaii corporation, and that the foregoing instrument was signed on behalf of said corporation by authority of its Board of Directors, and the said officers acknowledged said instrument to be the free act and deed of said corporation.

_____
Print or Type Name of Notary

_____
Signature of Notary
Notary Public in and for said
County and State          **BARBARA T. PAULO**
                          **Expiration Date: June 14, 2004**

My Commission Expires:

## EXHIBIT "A"

-FIRST:-

All of those certain parcels of land situate at Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, of the "ROYAL GROVE TRACT", as shown on File Plan 149, described as follows:

| LOT | AREA |
|---|---|
| 7, | 2,143 square feet, |
| 8, | 4,095 square feet, and |
| 9, | 4,125 square feet, more or less. |

Excepting and reserving from the above Lots 7 and 8, all that portion thereof conveyed to the City and County of Honolulu, by George S. Curry and Gertrude T. Curry, by Deed dated June 4, 1934, recorded in the Bureau of Conveyances of the State of Hawaii in Liber 1264 at Page 297, and being more particularly described as follows:

All of that certain parcel of land (portion of the land described in and covered by Royal Patent 4492, Land Commission Award 104, F. L., Apana 5 to M. Kekuanaoa) situate, lying and being at Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, being PORTIONS OF LOTS 7 and 8 of the "ROYAL GROVE TRACT", File Plan 149, and thus bounded and described:

Beginning at the north corner of this parcel, said point being the northeast corner of Lot 8 of Royal Grove, File Plan 149, the direct azimuth and distance from a City and County Survey Street Monument at the intersection of monument lines on Kaiulani Drive mauka of Kuhio Avenue being 58° 53' 45.82 feet, and the direct azimuth and distance to said Monument from City and County Survey Street Monument at the intersection of monument lines at Kaiulani Drive and Prince Edward Avenue being 266° 30' 292.87 feet, and running by true azimuths measured clockwise from true South:

1. 318° 18'     19.42                    feet along the southwest side of Kuhio Avenue;

2. Thence along the proposed southwest side of Kaiulani Drive and Kuhio Avenue on a curve to the left with a radius of 40.0 feet, the direct azimuth and distance being 112° 24' 34.94 feet;

| 3. | 266° 30' | 19.42 | feet along strip of land noted as "Lane in Royal Grove", File Plan 149, to the point of beginning and containing an area of 54 square feet, more or less. |

Further excepting and reserving from the above Lots 7, 8 and 9, all that portion thereof conveyed to the City and County of Honolulu, a municipal corporation of the State of Hawaii, by Deed dated January 27, 1978, recorded in said Bureau in Liber 12780 at Page 651, and being more particularly described as follows:

PARCEL 10 - of KUHIO AVENUE WIDENING (KAIULANI AVENUE TO KAPAHULU AVENUE): Being portions of Lots 7, 8 and 9 of the Royal Grove (File Plan 149), and being also a portion of R.P. 4493, L.C. Aw. 104 F.L., Apana 5 to M. Kekuanaoa. Situate at Waikiki, Honolulu, Oahu, Hawaii.

Beginning at the south corner of this parcel of land, and on the new southwest side of Kuhio Avenue, the coordinates of said point of beginning referred to Government Survey Triangulation Station "WAIKIKI" being 2,646.37 feet south and 1,696.36 feet east, as shown on Division of Land Survey and Acquisition Parcel Map File No. 18-1-2-57, thence running by azimuths measured clockwise from true South:

| 1. | 138° 18' | 96.91 | feet along the new southwest side of Kuhio Avenue along remainders of Lots 9, 8 and 7 of the Royal Grove (File Plan 149); |

| 2. | Thence along the present south corner of Kuhio and Kaiulani Avenues, on a curve to the right with a radius of 40.00 feet, the chord azimuth and distance being 300° 35' 30" 24.33 feet; |

| 3. | 318° 18' | 73.73 | feet along the present southwest side of Kuhio Avenue; |

| 4. | 48° 18' | 7.40 | feet along Lot 10 of the Royal Grove (File Plan 149) to the point of beginning and containing an area of 662 square feet, more or less. |
|----|---------|------|------|

-SECOND:-

All of that certain parcel of land situate, lying and being at Waikiki, Honolulu, City and County of Honolulu, State of Hawaii, being a PORTION OF LOT 16 of the "ROYAL GROVE TRACT", File Plan 149, bearing tax key designation 2-6-023-por. 064 (1), and containing an area of 500 square feet, more or less.

Said parcels of land having been acquired by Warranty Deed by HAWAIIAN EBBTIDE HOTEL, INC., a Hawaii corporation, as grantor, in favor of DUDLEY LEINANI FULLARD-LEO, as Trustee of The Dudley Leinani Fullard-Leo Palmyra Trust dated December 29, 1995 and AINSLEY A.K. FULLARD-LEO, as Trustee of the Ainsley A.K. Fullard-Leo Revocable Living Trust, as amended in its entirety on April 30, 1992, as grantee, which Warranty Deed is to be recorded in said Bureau prior to the recordation hereof.

SUBJECT, HOWEVER, to the following:

1. Reservation in favor of the State of Hawaii of all mineral and metallic mines.

2. A 15-foot building setback along Kuhio Avenue, as shown on File Plan No. 149.

3. Encroachments shown on survey dated August 2, 2000 prepared by Walter P. Thompson of Walter P. Thompson Inc.

The Lessee's interest in this Lease is subject to that certain Declaration dated December 2, 1992, recorded in said Bureau as Document No. 92-196513 and subject to various Proprietary Leases which have been issued by Lessee.